Filed 10/21/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| NANCY GOGLIN, | D068442 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00065336-CU-BC-CTL) |
| BMW OF NORTH AMERICA, LLC et al., | |
| Defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge. Affirmed.


Lehrman Law Group, Kate S. Lehrman and Robert A. Philipson, for Defendant and Appellant BMW of North America, LLC.

Arent Fox, John D. Bronstein and Steven A. Haskins, for Defendant and Appellant GMG Motors, Inc., doing business as BMW of San Diego.

Michael E. Lindsey, for Plaintiff and Respondent.

# I

## INTRODUCTION

BMW of North America, LLC (BMW North America) and GMG Motors, Inc., doing business as BMW of San Diego (BMW San Diego) appeal from a judgment awarding Nancy Goglin over $185,000 in attorney fees and costs for successfully settling her claims under the Song-Beverly Consumer Warranty Act (Song-Beverly Act) (Civ. Code, § 1790 et seq.) and other consumer protection statutes. Both BMW North America and BMW San Diego contend Goglin is not entitled to any attorney fees or costs because BMW San Diego offered an appropriate remedy before Goglin filed her complaint, which Goglin unreasonably refused to accept. Alternatively, BMW San Diego contends the fee award should be reduced because there is insufficient evidence to show Goglin's counsel's hours worked and hourly rate were reasonable given the litigation's lack of risk and complexity. We are not persuaded by these contentions and affirm the judgment.

# II

## BACKGROUND

In April 2011 Goglin entered into a retail installment sale contract to purchase a used 2008 BMW 535i from BMW San Diego. The total sale price for the vehicle was $45,762, payable in 60 monthly installments of $762.70.

In June 2013 Goglin sent BMW North America and BMW San Diego a letter asserting they violated the Consumers Legal Remedies Act (Consumers Act) (Civ. Code, § 1750 et seq.) in multiple respects by selling her a used vehicle with prior collision

damage and a protracted history of mechanical failure.[1]  She requested they remedy the violation by unwinding the transaction, refunding her payments, reimbursing her for her reasonable expenses, and paying off her outstanding loan balance.  She also requested they enter a stipulated injunction requiring them "to disclose collision damage in writing, prior to sale, and in particular, disclose if the BMW Certified Pre Owned program actually allows sale of vehicles with prior collision damage."

In July 2013 BMW San Diego responded to Goglin with a letter questioning her claims.  BMW San Diego nonetheless offered to resolve the matter by repurchasing the vehicle for all costs incurred by Goglin, including paying off her existing loan and reimbursing her for her down payment and any loan payments she made, less an offset for depreciation due to her use of the vehicle (see *Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1012-1013) and any material damage to it.  BMW San Diego also offered to reimburse Goglin for reasonable attorney fees.  The offer was contingent upon Goglin agreeing to a general release and to dismissing BMW San Diego with prejudice from any lawsuit she may have filed.  Among its terms, the proposed settlement and

---

[1]     Thirty days before filing an action for damages under the Consumers Act, a consumer must notify the person alleged to have violated the act and demand the person correct, repair, replace, or otherwise rectify the violating goods or services.  (Civ. Code, § 1782, subd. (a).)  No action for damages may be maintained if, within 30 days after receipt of the notice, "an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time."  (Civ. Code, § 1782, subd. (b).)

release agreement included a waiver of the provisions of Civil Code section 1542[2] and a confidentiality and nondisparagement clause.[3]

In August 2013 Goglin countered with a letter to BMW San Diego indicating she would accept BMW San Diego's offer to the extent the offer was to reimburse her in full for the vehicle without offsets. She indicated she had thus far made payments totaling $19,830.20, with $24,932 still owing on her loan. She also estimated her incidental and consequential damages to be $1,800. She declined to sign the proposed settlement and release agreement "with its contingencies, waivers, denial of liability, and confidentiality requirements," including the waiver of the provisions of Civil Code section 1542 and the requirement for dismissal of her case with prejudice, stating the applicable consumer protection laws "do not require that consumers waive their rights in order to have a dealer comply with statutory obligations."

In September 2013 Goglin filed a complaint against BMW North America and BMW San Diego for violating the Song-Beverly Act, the Consumers Act, and other

---

[2]    Civil Code section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

[3]    The confidentiality and nondisparagement clause stated: "Parties agree, their attorneys, or anyone else on their behalf, agree all terms of this Settlement & Release Agreement are confidential and shall not be communicated to any third party except and unless required by law. The Parties acknowledge the breach of this confidentiality provision is a material breach of this Agreement and the non-breaching Party shall be entitled immediately to all equitable and legal remedies permitted by law. The Parties shall not take any action or make any comments that actually or potentially disparage, disrupt[,] damage, impair, or otherwise interfere with each other's business interests or respected reputations."

4

consumer protection acts. More particularly, she alleged the vehicle she purchased had numerous defects, including engine and electrical system defects, which BMW North America and BMW San Diego were unable to repair during the applicable warranty period. She further alleged BMW North America and BMW San Diego were obliged to and failed to promptly replace or make restitution for the vehicle. Among other relief, the complaint prayed for compensatory damages in the amount of $45,762, consequential and incidental damages in an unspecified amount, a civil penalty of twice the amount of Goglin's total damages, and reasonable attorney fees and costs. The complaint also prayed for an injunction to prevent further similar misconduct.

BMW San Diego answered the complaint with a general denial and 24 alleged affirmative defenses. BMW North America answered the complaint with general and specific denials and 42 alleged affirmative defenses.

The parties engaged in discovery,[4] which included Goglin noticing the deposition of BMW North America's person most qualified to testify regarding BMW North America's used vehicle certification program, its communications with Goglin, its reasons for not repurchasing or replacing her vehicle, its policies and procedures for complying with "the Lemon Law," and its arbitration or dispute resolution process.[5] The deposition notice included a request for production of six categories of documents.

---

[4]     BMW San Diego did not propound any discovery of its own. It only responded to discovery from Goglin.

[5]     The Song-Beverly Act is commonly referred to as California's "lemon law." (*Department of Consumer Affairs v. Superior Court* (2016) 245 Cal.App.4th 256, 260.)

5

Although BMW North America's person most qualified appeared for the deposition, BMW North America did not produce the requested documents, indicating the documents had previously been produced in response to another discovery request. After objecting to Goglin's attorney's initial deposition questions, BMW North America's attorney suspended the deposition and sought a protective order either precluding the deposition from occurring or limiting its scope. As the chief ground for the protective order, BMW North America asserted because it had already agreed to purchase Goglin's vehicle, the deposition served no purpose other than to increase the cost of litigation and artificially inflate Goglin's attorney fees claim. The court denied the motion and ordered BMW North America to pay Goglin monetary sanctions of $7,295.[6] BMW North America is not directly challenging this ruling on appeal.

Meanwhile, in February 2014, BMW North America and BMW San Diego collectively offered to repurchase the vehicle and settle the matter for $54,824.16. The settlement amount consisted of reimbursing Goglin for prior monthly payments of $24,454.54, paying off her outstanding loan balance of $20,369.62, and paying for attorney fees and costs of $10,000. The offer was conditioned upon Goglin dismissing her case with prejudice and executing a settlement agreement containing a confidentiality clause and a waiver of the provisions of Civil Code section 1542.

---

[6]     The award amount was based on a declaration from Goglin's counsel indicating he paid $395 for the deposition court reporter and spent 9.5 hours in connection with the failed deposition and the motion opposition at a billing rate of $575 an hour.

In April 2014 Goglin countered with a letter to BMW North America indicating she would accept the offer to the extent it was an unconditional offer to comply with Civil Code section 1793.2, subdivision (d)(2).[7]  In exchange, she would dismiss her "[Song-Beverly Act] cause of action, on an individual basis only, with a stipulation that [she] is prevailing party, and that [she] retains standing to represent others similarly

_____

[7]	Civil Code section 1793.2, subdivision (d)(2), which is part of the Song-Beverly Act, provides in relevant part:  " If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle … to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B). However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle.

"[¶] . . . [¶] (B) In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.

"(C) … When restitution is made pursuant to subparagraph (B), the amount to be paid by the manufacturer to the buyer may be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity. The amount directly attributable to use by the buyer shall be determined by multiplying the actual price of the new motor vehicle paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity. Nothing in this paragraph shall in any way limit the rights or remedies available to the buyer under any other law."

For purposes of this statute, a new motor vehicle includes "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." (Civ. Code, § 1793.22, subd. (e)(2).)

situated on all counts." She again rejected "any requirement of a release agreement with contingencies, waivers, denial of liability, and confidentiality requirements, including any requirement of a [Civil Code section] 1542 waiver" because the applicable consumer protection statutes "do not require that consumers waive their rights in order to have a manufacturer comply with statutory obligations." She also rejected the requirement she dismiss her case with prejudice, anticipating the case would "proceed on the balance of the claims, including, but not limited to defendants' liability for civil penalty."[8]

In June 2014 BMW North America and BMW San Diego served Goglin with a statutory offer to compromise (Code Civ. Proc., § 998). In exchange for a dismissal of the action with prejudice, they agreed to repurchase the vehicle for $45,762, including reimbursing her for the loan payments she had made and paying off her loan balance. They also agreed to pay her incidental and consequential damages according to proof as well as reimburse her for attorney fees and costs in an amount to be determined by a noticed motion.

In November 2014 the parties settled their dispute. Under the terms of the settlement, BMW North America and BMW San Diego agreed to pay Goglin $75,000, less Goglin's loan balance. BMW North America and BMW San Diego also agreed to pay Goglin's attorney fees and costs in an amount to be separately negotiated or resolved by a noticed motion. Goglin agreed to return the vehicle in good condition, without any

---

8    "If the buyer establishes that the failure to comply [with an obligation under the Song-Beverly Act] was willful, the judgment may include, in addition to [actual damages], a civil penalty which shall not exceed two times the amount of actual damages." (Civ. Code, § 1794, subd. (c).)

offset for mileage, ordinary wear and tear, or the defects or damage from the defects at issue in this case. She also agreed to dismiss the action with prejudice. The terms of the settlement expressly did not require her to sign a settlement agreement or release of any kind.

In April 2015 Goglin filed a motion for award of $200,249.19 in attorney fees and costs. The motion was supported by billing statements showing Goglin's counsel worked on the case 12.8 hours from the beginning of May to the end of July 2013 at the rate of $575 an hour and 300.7 hours from the end of July 2013 forward at the rate of $625 an hour, for total attorney fees of $195,297.50.[9] The motion was also supported by billing statements showing Goglin's counsel advanced costs of $4,951.69.

BMW North America and BMW San Diego both opposed the motion. BMW San Diego argued Goglin's counsel should not be compensated for the time spent in, or reimbursed for the cost of, any litigation-related activities because BMW San Diego had offered to settle the matter before Goglin filed her complaint and, consequently, any time spent in litigation-related activities was unnecessary and unreasonable. BMW San Diego further argued Goglin's counsel should be compensated no more than $300 an hour, the same rate BMW San Diego paid its own counsel, because this case was neither complex nor risky for Goglin's counsel.

---

[9]    According to Goglin's counsel's declaration, Goglin agreed to pay him $625 an hour, which is the rate he charges for all consumer cases in which he provides legal services on a contingent basis. In his experience, comparable lawyers typically charge a rate of between $475 and $725 an hour, and he has been paid rates within this range upon settling comparable cases.

BMW North America similarly argued the claimed fees were grossly inflated and not reasonably expended because Goglin ignored repeated offers of restitution, filed an unnecessary lawsuit, and engaged in unnecessary litigation activity. BMW North America also argued the case did not warrant a large attorney fees award because the litigation was not complex, there was no uncertainty of prevailing on the merits, and Goglin settled for only $75,000 of the total recovery of $137,286 she initially sought (purchase price plus a civil penalty of twice the purchase price). Finally, BMW North American argued the court should disallow any litigation costs because none of the costs were reasonably necessary given the prelitigation offer to reimburse Goglin for everything she was owed.

The court granted Goglin's motion for attorney fees and costs in part. The court determined the total number of hours Goglin's counsel claimed to have incurred in prosecuting the case was reasonable. However, the court reduced the hourly rate for Goglin's counsel from $625 to $575 because Goglin's counsel had previously represented as part of Goglin's opposition to BMW North America's motion for a protective order that his hourly rate was $575 (see fn. 6, *ante*) and the court had previously determined this rate to be reasonable. Accordingly, the court awarded Goglin attorney fees of $180,262.50 and costs of $4,951.69, for a total award of $185,214.19.

III

DISCUSSION

A

Although Goglin's complaint asserted multiple causes of action with differing statutory bases, Goglin sought attorney fees solely under the Song-Beverly Act.[10] A prevailing buyer in an action under the Song-Beverly Act "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." (Civ. Code, § 1794, subd. (d).) The statute "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable. These circumstances may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved. If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount. A prevailing buyer has the burden of 'showing that the fees incurred were "allowable," were "reasonably necessary

_____

[10]     We, therefore, need not and do not address any arguments regarding the fee award's propriety under the Consumers Act.

11

to the conduct of the litigation," and were "reasonable in amount." ' " (*Nightingale v. Hyundai Motor America* (1994) 31 Cal.App.4th 99, 104.)

"We review an award of attorney fees under [the Song-Beverly Act] for abuse of discretion. [Citations.] We presume the trial court's attorney fees award is correct, and '[w]hen the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated.' [Citation.] 'The " 'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " ' " (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 998.)

B

1

Both BMW North America and BMW San Diego contend Goglin is not entitled to any attorney fees or costs because she unreasonably refused to accept BMW San Diego's prelitigation settlement offer. However, this contention ignores the unfavorable aspects of the offer, including requiring Goglin to agree to a broad release of claims and a confidentiality clause.[11] Goglin repeatedly and consistently objected to these extraneous

---

11     The prelitigation offer was in response to a notice required by the Consumers Act for Goglin's claim under that statute. The notice did not mention Goglin's claims under the Song-Beverly Act or other applicable consumer protection statutes. The Song-Beverly Act prohibits an automobile manufacturer or dealer from conditioning reacquisition of a vehicle on the buyer's agreement not to disclose the vehicle's problems or the nonfinancial terms of the reacquisition. (Civ. Code, § 1793.26, subd. (a).) Thus, the requirement for Goglin to agree to a confidentiality provision was unlawful as to her

12

provisions and the parties' final settlement agreement does not include them. Rejecting the prelitigation settlement because of these unfavorable extraneous terms was not unreasonable. (*McKenzie v. Ford Motor Company*, *supra*, 238 Cal.App.4th at pp. 705-708 [court abused its discretion in denying attorney fees to a plaintiff in a Song-Beverly Act case for the period after the plaintiff rejected an initial settlement offer with extraneous nonfinancial terms, including a broad release of claims and an illegal confidentiality clause, because the plaintiff's rejection of a settlement offer with such terms was not unreasonable]; *Gezalyan v. BMW of N. Am., LLC* (C.D.Cal 2010) 697 F.Supp.2d 1168, 1170 [the plaintiff in a Song-Beverly Act case is entitled to attorney fees after rejecting a repurchase offer containing numerous nonfinancial conditions not authorized by the act, including requiring agreement to a general release and a confidentiality clause].)

Additionally, the record belies BMW North America's and BMW San Diego's assertions Goglin could have avoided litigation and settled the matter earlier had she negotiated more at the outset. Goglin's counsel unambiguously communicated in a letter countering the prelitigation settlement offer that Goglin was unwilling to agree to a general release or a confidentiality clause. There is no indication in the record BMW North America or BMW San Diego ever responded to this letter. Rather, several months after the litigation commenced, BMW North America and BMW San Diego made another settlement offer including these same conditions even though they knew Goglin

Song-Beverly Act claims. (*McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 700.)

13

objected to the conditions and they should have known the confidentiality clause was unlawful as to Goglin's Song-Beverly Act claims (see fn. 11, *ante*).

Goglin's counsel again unambiguously communicated in a letter countering the offer that Goglin was unwilling to agree to a general release or a confidential clause. There is no indication in the record BMW North America or BMW San Diego ever responded to this letter either. Although, with a mediator's assistance, BMW North America and BMW San Diego ultimately agreed to a settlement without these conditions, their appeals are largely premised on their belief Goglin should have accepted a settlement with the conditions notwithstanding statutory and case law supporting her position. Accordingly, we cannot conclude the failure to resolve this case earlier was attributable solely to Goglin's obstinacy or a desire on her counsel's part to generate fees.

*Benson v. Southern California Auto Sales, Inc.* (2015) 239 Cal.App.4th 1198 (*Benson*), upon which BMW North America and BMW San Diego rely, is inapposite. The *Benson* case involved a motion for attorney fees under the Consumers Act. (*Id.* at pp. 1205, 1209.) The case held attorney fees are not recoverable in an action for damages under this act when the defendant makes an appropriate correction offer within 30 days after the plaintiff provides the defendant with the prelitigation notice required by the act. (*Id.* at p. 1212.) The case further held conditioning the correction offer on the plaintiff's agreement to release all other non-Consumers Act claims did not render the correction offer inappropriate because plaintiff's non-Consumers Act claims had no independent value, settlement agreements routinely include mutual releases of all claims, and the

14

Consumers Act does not prohibit the release of non-Consumers Act claims.[12]  (*Id.* at pp. 1209-1210.)

Unlike here, the *Benson* case did not involve a motion for attorney fees under the Song-Beverly Act (*Benson*, *supra*, 239 Cal.App.4th at p. 1209), which does not have a comparable prelitigation notice requirement.  The case also did not address whether the rejection of a prelitigation settlement offer would preclude entitlement to an attorney fee award under the Song-Beverly Act where the offer is conditioned upon agreement to a confidentiality clause prohibited by the act.  The *Benson* case, therefore, provides no guidance for resolving this appeal.

2

BMW San Diego alternatively contends the fee award should be reduced because there is insufficient evidence to show Goglin's counsel's hours worked and hourly rate were reasonable given the litigation's lack of risk and complexity.  We disagree.

a

Regarding the hours worked by Goglin's counsel, BMW San Diego's contention primarily rests on its belief any litigation work in this case was unnecessary because BMW San Diego made a reasonable prelitigation settlement offer Goglin should have accepted.  For the reasons stated above, we are not persuaded by this contention.

---

[12]    The Consumers Act does, however, prohibit the release of Consumers Act claims. (Civ. Code, § 1751, partially preempted by the Federal Arbitration Act as recognized in *Sanchez v. Valencia Holding Company, LLC* (2015) 61 Cal.4th 899, 923-924.)

15

BMW San Diego also rests its contention on its belief the litigation work required of Goglin's counsel was not complex because counsel considered BMW North America's and BMW San Diego's settlement offers to be admissions of liability, which obviated Goglin's need to prove liability. Goglin's counsel's remarks on this point, which were contained in letters countering settlement offers, appear to be posturing. The settlement offers themselves contained no admission of liability and two of the three offers expressly indicated liability was not being admitted. Thus, until the case actually settled, Goglin had to conduct discovery and prepare to prove liability on her varied claims with their varied elements. She also had to be prepared to counter the numerous affirmative defenses raised in the answers to her complaint. We, therefore, cannot conclude the court abused its discretion in finding the time spent by Goglin's counsel on litigation activities was reasonable.

b

Regarding Goglin's counsel's hourly rate, the record includes declarations from Goglin's counsel, which indicated Goglin initially agreed to pay him $575 an hour and later agreed to pay him $625 an hour for legal services performed in this case. Goglin's billing records are consistent with the declarations. The declarations further indicated various state and federal courts had previously awarded him attorney fees for comparable work at comparable hourly rates. BMW North America and BMW San Diego presented no evidence contradicting these points. Although BMW North America and BMW San

16

Diego presented evidence they paid their counsel much lower hourly rates,[13] the trial court was not obliged to accept this evidence as conclusive of the appropriate hourly rate for the work performed by Goglin's counsel. Rather, the trial court, who considered all of the evidence before it and observed Goglin's counsel's lawyering skills firsthand, determined $575 was an appropriate hourly rate. As the record does not show this determination was clearly wrong, we cannot conclude the trial court abused its discretion in basing its fee award on this hourly rate.

IV

DISPOSITION

The judgment is affirmed. Respondent is awarded her costs on appeal.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

O'ROURKE, J.

---

[13] BMW North America's counsel billed his time to BMW North America at the rate of $275, which counsel acknowledged "is considerably less than the rates charged by other attorneys with similar experience and ability." BMW San Diego's counsel's usual hourly rate is approximately $450, but he agreed to represent BMW San Diego for an hourly rate of $300.