Filed 5/3/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| EFIGENIA GARCIA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>    Defendant and Respondent. | B279897<br><br>(Los Angeles County<br>Super. Ct. No. BC588535) |

THE COURT:*

It is ordered that the opinion filed herein on April 5, 2018, be modified as follows:

1.    On page 11, the sentence beginning on line 11 with "Lastly," and ending on line 14 with "an *express* warranty" is modified to read as follows:

> Lastly, the Act affirmatively states that manufacturers are not required to refund buyers for the cost of "nonmanufacturer items installed by a dealer" (that is, dealer add-ons) when the buyer sues for breach of an *express* warranty.

---

\*      LUI, P. J.,          CHAVEZ, J.,          HOFFSTADT, J.

2.      On page 11, the sentence beginning on line 15 with "This statutory carve-out" and ending on line 19 with "implied warranty claim" is modified to read as follows:

> This statutory carve-out for dealer add-ons would be largely nullified if we were to conclude that buyers had a right to make manufacturers pay for dealer add-ons under an implied warranty theory; all a buyer would have to do is restate her breach of express warranty claim as a breach of implied warranty claim, something that could be done in every case in which the defect is one that renders the new car "[un]fit for the ordinary purposes for which [cars] are used" (thereby breaching the implied warranty) (§ 1791.1, subd. (a)(2)) because such a defect necessarily renders the car "nonconforming" (thereby breaching any express warranty) (§ 1793.2, subd. (c)).

3.      On page 11, line 20, the words "in whole or in part" are to be inserted after the word "statutes" so the sentence reads as follows:

> We must avoid rulings that nullify statutes in whole or in part.

4.      In the first sentence on page 13, the word "all" is changed to "many" so the sentence reads:

> It does not speak to—or in any way undermine—our concern that many express warranty claims can be restated as implied warranty claims, thereby sidestepping and negating our Legislature's explicit limitation on express warranty claims.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

**CERTIFIED FOR PUBLICATION.**

Filed 4/5/18 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| EFIGENIA GARCIA, | B279897 |
|     Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC588535) |
|     v. | |
| MERCEDES-BENZ USA, LLC, | |
|     Defendant and Respondent. | |

      APPEAL from a judgment of the Superior Court of Los Angeles County.  Mel Red Recana, Judge.  Affirmed as modified.

      Law Offices of René Korper, René Korper and Thomas E. Solmer for Plaintiff and Appellant.

      Universal & Shannon, Jon D. Universal and James P. Mayo for Defendant and Respondent.


\* \* \* \* \* \*

After the engine of a brand new Mercedes-Benz died, the car's manufacturer offered to repurchase the car for the full amount *less* the $3,090 the buyer paid the dealer for additional products and services ("dealer add-ons"). After the buyer sued the manufacturer for breach of the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act (the Act) (Civ. Code, § 1790 et seq.),[1] the parties entered into a confidential settlement leaving attorney's fees and costs unresolved, and the buyer moved for attorney's fees as the "prevailing party" under the Act. This appeal chiefly presents the question: Is a buyer a prevailing party entitled to recover attorney's fees under the Act if, through settlement with the manufacturer, all she obtains by litigating is the payment of dealer add-ons for which the manufacturer is not responsible and the payment of attorney's fees? We conclude the answer is "no." For these reasons and others, we affirm the denial of attorney's fees but modify the judgment to award costs because the buyer obtained a net monetary recovery by virtue of the settlement.

## FACTS AND PROCEDURAL BACKGROUND

In April 2015, plaintiff Efigenia Garcia (Garcia) bought a Mercedes-Benz GLA250W4 at Keyes European, an authorized Mercedes-Benz dealer. Garcia paid $46,593.97, comprised of a $8,540 down payment and a loan for the balance.[2] The $46,593.97 amount included the cost of the car and $3,090 in dealer add-ons (namely, $1,700 for Mercedes-Benz tires and

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] The total sale amount was $49,546.88, which included the projected finance charges over the life of the automobile loan she took out. Because Garcia returned the car almost immediately after driving it off the lot, those charges were never incurred.

wheels, $995 for Ownerguard protection, and $395 for a third-party surface protection product).

A month later, the car's engine "failed entirely."

Soon thereafter, Garcia contacted defendant Mercedes-Benz USA, LLC (Mercedes-Benz), and Mercedes-Benz offered to repurchase the car. Before Mercedes-Benz laid out the details of the repurchase, Garcia hired an attorney. Mercedes-Benz sent a follow-up email, explaining that it would repurchase Garcia's car for the amount she paid the manufacturer, but would not reimburse her for dealer add-ons (or $18.99 in interest on those add-ons) or pay any attorney's fees.

A few days after receiving Mercedes-Benz's more detailed offer, Garcia sued Mercedes-Benz in a single-count complaint alleging breach of the implied warranty of merchantability, but which made additional allegations regarding the breach of an express warranty and sought relief only available for a breach of implied and express warranties. Pursuant to the Act, Garcia sought a refund of the full purchase price (including the amount paid to Mercedes-Benz for the car and the amount paid for the dealer add-ons), civil penalties of twice her actual damages, attorney's fees, and costs.[3] Garcia did not sue the dealer.

Before and after Garcia filed her complaint, the parties tried to negotiate a settlement. Garcia demanded (1) that Mercedes-Benz take custody of the car, (2) refund her the amounts paid to the dealer as well as Mercedes-Benz, and (3) pay her attorney's fees, initially of $2,500 and subsequently of $4,020. Mercedes-Benz's pre-complaint offer eventually gave way to an offer to refund her *everything* (including the amounts paid for the

---

[3]     We take judicial notice of the court file. (Evid. Code, § 452, subd. (c).)

3

dealer add-ons) and to pay either $1,000 in attorney's fees and costs or to leave them open for resolution by the court.

The parties entered into a confidential settlement that did not disclose the settlement amount and left the issues of attorney's fees and costs for judicial resolution. Garcia surrendered the car, and was paid the confidential amount.

Garcia then filed a motion for $8,430 in attorney's fees as the prevailing party under the Act as well as a memorandum of costs seeking $750 in costs. After full briefing, the trial court issued a written order denying attorney's fees and costs. In denying attorney's fees, the court noted that Garcia's entitlement to attorney's fees under the Act turned on whether she was the prevailing party and thus had achieved her litigation objectives, but ruled that the confidentiality of the settlement made it impossible to know whether Garcia had, in fact, achieved those objectives by obtaining more in the settlement than Mercedes-Benz had offered her prior to the lawsuit. The court declined to award costs on the ground that they could not be obtained by noticed motion.

A few weeks later, the trial court entered a judgment dismissing Garcia's lawsuit with prejudice. Garcia thereafter filed this timely appeal.

## DISCUSSION

Garcia argues that the trial court erred in denying her attorney's fees and costs. Mercedes-Benz asserts that we need not reach these questions because the trial court's denial order is not appealable. We address the appealability question first.

## I. Appealability

Mercedes-Benz contends that we are without jurisdiction to entertain Garcia's appeal from the trial court's order denying attorney's fees and costs because it is an interim order prior to judgment that is outside our appellate jurisdiction. We

4

independently review questions regarding our own jurisdiction. (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 252.)

As a general rule, we may only entertain appeals from final judgments. (Code Civ. Proc., § 904.1, subd. (a).) This rule is designed "'to prevent piecemeal dispositions and costly multiple appeals.' [Citation.]" (*Howeth v. Coffelt* (2017) 18 Cal.App.5th 126, 133-134.) One corollary of this "one final judgment" rule is that "'"interlocutory or interim orders are not appealable."'" (*Id.* at p. 133.) This corollary applies to an order denying interim (that is, prejudgment) attorney's fees. (*Sese v. Wells Fargo Bank N.A.* (2016) 2 Cal.App.5th 710, 716.) However, a second corollary of the "one final judgment" rule is that interim rulings that are not *themselves* appealable remain "'"'reviewable on appeal' from the final judgment."'" (*Howeth*, at p. 133.) Because "[a] dismissal with prejudice following a settlement constitutes a final judgment on the merits" (*Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1533; Code Civ. Proc., § 581d), we have jurisdiction to review the trial court's prejudgment attorney's fees and costs order on appeal from the final judgment subsequently entered in this case.

## II. Merits

Garcia contends that she is entitled to attorney's fees and costs as a prevailing party under the Act. We review a trial court's attorney's fees and cost rulings, including its determination of whether a party is the prevailing party for an abuse of discretion. (*Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 470 (*Goglin*); *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1047 (*MacQuiddy*); *El Dorado Meat Co. v. Yosemite Meat & Locker Service, Inc.* (2007) 150 Cal.App.4th 612, 617 [award of costs].) To the extent these inquires require us to construe statutes, our review is de novo (*Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th

5

1252, 1258 (*Wohlgemuth*)); to the extent they require us to review the trial court's factual findings, we review for substantial evidence (*Stratton v. Beck* (2017) 9 Cal.App.5th 483, 496).

### A. Attorney's Fees

#### 1. Legal framework

The Act is colloquially known as California's "lemon law," and is a "strongly pro-consumer" law aimed at protecting, among others, new car buyers. (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990.) Toward that end, the Act: (1) requires all "manufacturers" and "retail sellers" of new cars to extend an implied warranty of merchantability to the buyer that assures that the car is "fit for the ordinary purposes for which [cars] are used" (§§1791.1, subd. (a)(2) & 1792; *Brand v. Hyundai Motor America* (2014) 226 Cal.App.4th 1538, 1546 (*Brand*); see also § 1792.3 [implied warranty not subject to wavier unless strict requirements for "as is" sales are met]); and (2) regulates how any express warranties made by manufacturers, retail sellers, and others are created and enforced (§§ 1793.1, 1793.2, 1793.3, 1795).

The Act also grants new car buyers the right to sue when a manufacturer or retail seller "fail[s] to comply" with any "implied or express warranty." (§ 1794, subd. (a).) A buyer bringing suit may seek actual damages, which differ depending on whether she alleges a breach of implied warranty or a breach of an express warranty. (Compare §§ 1794, subd. (b), 1791.1, subd. (d); Cal. U. Com. Code, §§ 2711-2715 [remedies for breach of implied warranty] with §§ 1793.2, subd. (d), 1793.3 [remedies for breach of express warranty], 1795 ["persons other than the manufacturer of the goods" may make express warranties]; see generally *Music Acceptance Corp. v. Lofing* (1995) 32 Cal.App.4th 610, 620-621 [noting how remedies differ]; *Brand, supra,* 226 Cal.App.4th at p. 1548 [same].) Unless a buyer's "claim [is]

6

based solely on a breach of an implied warranty," the buyer may also seek a "civil penalty" (of up to two times the amount of actual damages) if the manufacturer's or retail seller's "failure to comply was willful." (§ 1794, subds. (c) & (e).)

Most pertinent here, a buyer who "prevails in [her] action" may recover "costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution" of her action under the Act. (§ 1794, subd. (d).) Making attorney's fees available to prevailing buyers (but not prevailing manufacturers or retail sellers) is designed to "'provide[] injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible.'" (*Wohlgemuth, supra*, 207 Cal.App.4th at p. 1262.)

The Act does not define the term prevailing party. (§ 1794, subd. (d).) The courts have split over how to fill this void when it comes to the award of attorney's fees.

A handful of courts have imported the definition of prevailing party from the general statute governing costs, Code of Civil Procedure section 1032. (See *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1158, disapproved on other grounds in *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1261; *Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 181.) Under that statute, the party who obtains "a net monetary recovery" is a prevailing party. (Code Civ. Proc., § 1032, subd. (a)(4); *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1157 (*DeSaulles*).)

A greater number of courts have elected to take a more "pragmatic" and less restrictive approach to assessing whether a buyer has prevailed. (See *Wohlgemuth, supra*, 207 Cal.App.4th at p. 1264; *MacQuiddy, supra,* 233 Cal.App.4th at p. 1047;

7

*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 149-151; see also *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1018-1019 [collecting cases].) Under this approach, it is not enough for a buyer to show that he "obtained a net monetary recovery." (*MacQuiddy*, at p. 1047.) Instead, courts ask: To what extent did the buyer achieve her litigation objectives? (*Wohlgemuth*, at p. 1264.) By and large, litigation objectives are measured by what the party sought to obtain by filing suit. (E.g., *Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (2018) 20 Cal.App.5th 191, 204-205]; see generally *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 [looking to party's "pleadings, trial briefs, opening statements, and similar sources"].) Where, as here, the party filed suit after receiving a settlement offer, we measure litigation objectives by reference to what that party sought to obtain by rejecting the last prelitigation offer. (*MacQuiddy*, at pp. 1048-1049 [when buyer was offered all but civil penalty prior to litigation, buyer's litigation objective is obtaining civil penalty].) This focus dovetails neatly with the Act's overarching goal—namely, facilitating speedy and efficient refunds for (or exchanges of) "lemons" by giving manufacturers and retail sellers the incentives to make (and buyers the incentive to accept) offers that give buyers the remedies to which the Act entitles them. Thus, the question of whether a buyer is a prevailing party under the Act looks to what the buyer was last offered by the manufacturer or retail seller before filing suit and whether she achieved a greater result by the time of settlement or verdict. (*Id.* at p. 1049.)

We side with the decisions taking the more practical approach, and do so for two reasons. First, Code of Civil Procedure section 1032 provides on its face that its definition of prevailing party is meant to be "used in this section," not as the

8

universal default definition of the term.  (Accord, *Galan v. Wolfriver Holding Corp.* (2000) 80 Cal.App.4th 1124, 1128; *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1572.)  Second, importing Code of Civil Procedure section 1032's definition of prevailing party into the Act disserves the Act's purpose.  As pertinent here, the Act is designed to facilitate timely refunds for defective new cars (and to discourage foot dragging by manufacturers and retail sellers).  In so doing, the Act contemplates that buyers will *always* get a "net monetary recovery."  If that were enough by itself to qualify a buyer as a prevailing party (as it would be under Code of Civil Procedure section 1032's definition), a buyer would *always* be entitled to attorney's fees, even when the manufacturer or retail seller responds with alacrity to the buyer's demand for a refund.  Always awarding attorney's fees is not the Act's purpose.  (*Dominguez v. American Suzuki Motor Corp.* (2008) 160 Cal.App.4th 53, 60 (*Dominguez*) ["Based on a plain reading of the applicable statutory provisions, we cannot conclude the Legislature intended that every time a manufacturer repurchases or replaces consumer goods, a consumer is entitled to attorney fees"].)  Although adopting the pragmatic approach means that a buyer might be a prevailing party for one purpose (costs) but not another (attorney's fees), this outcome is of no moment.  (E.g., *McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1456 ["reject[ing] the contention that the prevailing party for the award of costs under section 1032 is necessarily the prevailing party for the award of attorney['s] fees"].)

The buyer bears the burden of showing that she prevailed. (See *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 817-818 (*Robertson*).)

9

2.    *Analysis*

Because Mercedes-Benz offered to repurchase her car for the full amount save the dealer add-ons, Garcia pursued litigation, at most, to achieve one or more of the following objectives:  (1) getting Mercedes-Benz to refund the amount of the dealer add-ons; (2) obtaining a civil penalty; and (3) seeking an award of attorney's fees under the Act.  Because Garcia did not demand any civil penalty in any of her post-complaint negotiations with Mercedes-Benz, she seemingly abandoned her objective of obtaining a civil penalty; we will nevertheless continue to treat it as one of her litigation objectives.

a.    Dealer add-ons

The trial court did not abuse its discretion in declining to find Garcia to be a prevailing party just because she pursued litigation to obtain the dealer add-ons from Mercedes-Benz.  That is because she is not legally entitled, under the Act, to obtain a refund of those *dealer* add-ons from the *manufacturer*. (Cf. *People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746 ["when a trial court's discretion rests on an error of law, that decision is an abuse of discretion"].)  Garcia purchased the add-ons from the dealer, not Mercedes-Benz.  Except as to foodstuffs, a plaintiff seeking to recover for breach of an implied warranty of merchantability must prove privity with the breaching party.  (*Burr v. Sherwin Williams* Co. (1954) 42 Cal.2d 682, 695 ["privity of contract is required in an action for breach of . . . implied warranty"]; *Arnold v. Dow Chemical Co.* (2001) 91 Cal.App.4th 698, 720.)  As to the dealer add-ons, Garcia's privity is with the dealer—not Mercedes-Benz.

The Act itself reinforces this conclusion.  To begin, the Act recognizes that manufacturers and retail sellers (that is, dealers) are distinct entities.  (Compare § 1791, subd. (j) [defining "[m]anufacturer"] with § 1791, subd. (*l*) [defining "[r]etail

10

seller"].) Further, by granting only retail sellers the right to seek indemnity from manufacturers for any amounts they pay a buyer for breach of the implied warranty (§ 1792), the Act (1) reinforces that each entity is only to pay for its share of the buyer's loss, and (2) by negative implication affirms that manufacturers do not have a reciprocal right to seek indemnification from retail sellers for any amounts *the manufacturers* pay on retail sellers' behalf for a breach of the implied warranty. (*Spicer v. City of Camarillo* (2011) 195 Cal.App.4th 1423, 1427 ["a statute may express the law by 'negative implication'"].) Yet Garcia is asking Mercedes-Benz to pay for the dealer's breach. Lastly, the Act affirmatively states that manufacturers are not required to refund buyers for the cost of "nonmanufacturer items installed by a dealer" when the buyer sues for breach of an *express* warranty. (§ 1793.2 subd. (d)(2)(B).) This statutory carve-out for dealer add-ons would be nullified if we were to conclude that buyers had a right to make manufacturers pay for dealer add-ons under an implied warranty theory; all a buyer would have to do is restate her breach of express warranty claim as a breach of implied warranty claim. We must avoid rulings that nullify statutes. (*Elder v. Carlisle Ins. Co.* (1987) 193 Cal.App.3d 1313, 1319 ["In construing a statute, a court should . . . avoid an interpretation that would effectively nullify a portion of the statute"].)

Garcia assails two of the above stated reasons for concluding that a buyer cannot, under the Act, sue the manufacturer for a refund of goods and services purchased from the dealer. First, she argues that the Act does not require privity. To be sure, there is language in a few cases stating that "under the Act, the buyer can sue 'the manufacturer' for breach of the implied warranty of merchantability despite a lack of privity." (*Mega RV Corp. v. HWH Corp.* (2014) 225 Cal.App.4th 1318, 1333, fn. 11; *Gusse v. Damon Corp.* (2007) 470 F.Supp.2d 1110,

11

1116, fn. 9 (*Gusse*).)  But this language stands for the unremarkable and statutorily compelled conclusion that a buyer may always sue the manufacturer for breach of the implied warranty under the Act irrespective of the buyer's privity with the manufacturer.  (*Mega RV*, at p. 1333 [buyer may sue manufacturer for defects in component parts integrated into a vehicle]; *Gusse*, at p. 1116 [buyer may sue manufacturer for car obtained from dealer]; see generally *Mega RV*, at p. 1333 ["The Act protects purchasers of consumer goods by requiring specified implied warranties [and] placing strict limitations on how and when a manufacturer may disclaim those implied warranties"].)  This language does not stand for the much broader proposition that privity does not matter *at all* under the Act.  To the contrary, and as explained above, the Act expressly treats manufacturers and retail sellers as distinct entities and consequently does not allow a buyer to sue a manufacturer for the retail seller's breach of an implied warranty.

Second, Garcia asserts that we need not be concerned that buyers will always do "end runs" around the statutory carve out for dealer add-ons that applies to an express warranty by recasting their claims as breaches of an implied warranty because buyers may seek a refund or a replacement vehicle (and may sue for the failure to provide such) under an express warranty theory only if the manufacturer is first given a reasonable opportunity to repair the vehicle.  (§ 1792.3, subd. (d)(1) & (2); *Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1103; *Robertson*, *supra*, 144 Cal.App.4th at p. 810; see also *Silvio v. Ford Motor Co.* (2003) 109 Cal.App.4th 1205, 1206-1207 [affirming conclusion that manufacturer may insist upon two opportunities to repair vehicle].)  But this precursor requirement establishes, at best, that not all implied warranty claims can be restated as express warranty claims.

12

It does not speak to—or in any way undermine—our concern that all express warranty claims can be restated as implied warranty claims, thereby sidestepping and negating our Legislature's explicit limitation on express warranty claims.

Because Mercedes-Benz is not legally responsible to pay Garcia for the dealer add-ons, Garcia's success in getting Mercedes-Benz to pay more than the statute requires does not count as a cognizable litigation benefit. A buyer can be a prevailing party under the Act if she incurs attorney's fees after rejecting a settlement on terms the law does not require or permit. (E.g., *Goglin*, *supra*, 4 Cal.App.5th at pp. 471-472 [buyer rejected settlement containing a broad waiver of rights; prevailing party]; *McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 705-708 [buyer rejected settlement containing illegal confidentiality clause and broad waiver of rights; prevailing party].) However, a buyer is not a prevailing party under the Act just because she incurs attorney's fees to obtain relief beyond that to which she is entitled. In such a case, the manufacturer or retail seller is paying more than it is legally required to pay just to end the litigation. Were the buyer who extracts such a "nuisance value" as part of a settlement to be rewarded with attorney's fees (by being declared a prevailing party), we would be acting in derogation of the true purpose of the Act's attorney's fees provision (which, as noted above, is to remove the disincentive buyers might face when deciding whether to hire a lawyer to enforce their rights under the Act (*Wohlgemuth*, *supra*, 207 Cal.App.4th at p. 1262)) as well as creating a perverse incentive for buyers to continue litigating in the hopes of obtaining a nuisance value that would entitle them to attorney's fees as well (see *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 392 ["A rule that creates . . . a perverse set of incentives is untenable"]).

13

We are cognizant that our conclusion that a buyer is not a prevailing party under the Act's attorney's fees provision just because she convinces the manufacturer to pay for products and services supplied by the retail seller means that a buyer will not have a right to obtain a *full* refund for all outlay associated with her new defective car from a single party. And we recognize that a "one-stop" remedy for buyers may make good sense, especially when the buyer in most cases purchased the car as part of a "one-stop" shopping experience with the dealer. However, we are not free to disregard the Act's plain language to implement what might be otherwise good public policy; that task lies solely with our Legislature. (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1492 ["Courts defer to the legislative branch in matters of public policy."].)

   b. Civil penalty

A buyer's decision to proceed to trial to obtain a civil penalty under the Act *can* make her a prevailing party. (*MacQuiddy*, *supra*, 233 Cal.App.4th at p. 1049.) In this case, however, substantial evidence supports the trial court's finding that the confidential nature of the settlement precluded Garcia from showing whether she achieved that litigation objective. We know the parties' prelitigation positions and that Garcia obtained *some* monetary recovery (a point the parties concede), but we do not know the exact terms they ultimately agreed to. The trial court's refusal to infer the parties' ultimate settlement terms from their final volley of a non-confidential settlement letter was reasonable, and we must indulge all reasonable inferences when evaluating a ruling for substantial evidence. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.) Although settlements that make their financial terms confidential will in most cases render it impossible to determine whether the buyer prevailed in obtaining her litigation objective(s) (and thus

effectively foreclose any award of attorney's fees to the prevailing buyer), the Act specifically contemplates that a buyer and manufacturer or retail seller may effect a settlement that is confidential as to its "financial terms." (§ 1793.26, subd. (c).) As long as the Act sanctions such confidential settlements, buyers may effectively surrender their right to collect attorney's fees under the Act.

### c.     Attorney's fees

Where, as here, the trial court *could not* have found Garcia to be a prevailing party because Mercedes-Benz refunded the dealer add-ons and *did not* find that Garcia prevailed because she obtained a civil penalty, the trial court also did not abuse its discretion in declining to find Garcia to be a prevailing party just because she may have obtained the sole remaining litigation objective—namely, an agreement to pay attorney's fees in whatever amount the trial court deemed appropriate. The Act rewards a buyer who prevails with an award of attorney's fees. (§ 1794, subd. (d).) If a buyer's decision to hold out for attorney's fees were enough by itself to confer prevailing party status upon that buyer, then all a buyer would have to do to obtain attorney's fees is refuse to accept any settlement that did not offer attorney's fees and then sue for these fees. This is circular, because the buyer's entitlement to attorney's fees would make her a prevailing party and hence entitled to attorney's fees. It would also make attorney's fees available in just about every case, a result courts have soundly rejected. (*Dominguez*, *supra*, 160 Cal.App.4th at p. 60.)

### B.     *Costs*

As with attorney's fees under the Act, a plaintiff is entitled to her costs if she is a prevailing party. (§ 1794, subd. (d).) As noted above, the Act does not define what it means to be prevailing party. Fortunately, also as noted above, our

Legislature has defined what the term means in the context of costs in Code of Civil Procedure section 1032, making it unnecessary for us to resort to the judicially developed definition of prevailing party we used, above, to assess attorney's fees. Under section 1032, a prevailing party includes a "party" who obtains "a net monetary recovery." (Code Civ. Proc. § 1032, subd. (a)(4).) Our Supreme Court recently clarified that "a partial recovery, as long as it is a net monetary recovery, entitles a plaintiff to costs." (*DeSaulles*, *supra*, 62 Cal.4th 1140 at p. 1157.) Because Garcia obtained *some* net monetary recovery in her settlement with Mercedes-Benz (albeit of unknown amount), she is entitled to costs.

The trial court declined to award costs on the ground that Garcia submitted a *motion* for costs rather than a memorandum for costs, as required by California Rules of Court, rule 3.1700(a)(1). The court's ruling overlooked that Garcia submitted a memorandum of costs along with her motion for attorney's fees. Although Garcia's memorandum was filed *before* judgment was entered (rather than after, as the Rules of Court contemplate), this is of no significance. (*Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 880 ["courts treat prematurely filed cost bills as being timely filed"].) Accordingly, Garcia is entitled to the $750 in costs she requested.

## DISPOSITION

The judgment is modified to award Garcia $750 in costs. As modified, the judgment is affirmed. Each party is to bear its own costs on appeal.

## **CERTIFIED FOR PUBLICATION.**

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
CHAVEZ

17