Filed 12/6/18; Certified for Publication 12/27/18 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAMIE L. ETCHESON et al., | D072793 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2015-0004033-CU-BC-CTL) |
| FCA US LLC, | |
| Defendant and Respondent. | |

APPEAL from a postjudgment order of the Superior Court of San Diego County, Joan M. Lewis, Judge. Reversed and remanded with directions.

Rosner, Barry & Babbit and Hallen D. Rosner, Arlyn L. Escalante, Shaghayegh Dinata-Hanson for Plaintiffs and Appellants.

Nixon Peabody and David Henry Tennant, Scott S. Shepardson for Defendant and Respondent.

Plaintiffs and appellants Jamie L. Etcheson and Kelly M. Etcheson brought an action under the Song-Beverly Consumer Warranty Act (Civ. Code,[1] § 1790 et seq., commonly known as the "lemon law," hereafter the Act) against defendant and respondent FCA US LLC (FCA) after experiencing problems with a vehicle they had purchased new for about $40,000. After admitting the vehicle qualified for repurchase under the Act, FCA made two offers to compromise under Code of Civil Procedure section 998 (section 998): one in March 2015, to which plaintiffs objected and the trial court found was impermissibly vague, and a second in June 2016, offering to pay plaintiffs $65,000 in exchange for the vehicle's return. Following the second offer, the parties negotiated a settlement in which FCA agreed to pay plaintiffs $76,000 and deem them the prevailing parties for purposes of seeking an award of attorney fees.

Plaintiffs moved for an award of $89,445 in lodestar attorney fees with a 1.5 enhancement of $44,722.50 for a total of $134,167.50 in fees, plus $5,059.05 in costs. Finding the hourly rates and amount of counsels' time spent on services on plaintiffs' behalf to be reasonable, the trial court tentatively ruled plaintiffs were entitled to recover $81,745 in attorney fees and $5,059.05 in costs. However, in its final order the court substantially reduced its award, concluding plaintiffs should not have continued to litigate the matter at all after FCA's March 2015 section 998 offer. It found their sought-after

---

[1] Undesignated statutory references are to the Civil Code.

attorney fees after the March 2015 offer were not "reasonably incurred," and cut off fees from that point, awarding plaintiffs a total of $2,636.90 in attorney fees and costs.

Plaintiffs appeal from the postjudgment order. Pointing out their ultimate recovery was double the estimated value of FCA's invalid March 2015 section 998 offer, which they had no duty to counter or accept, they contend the trial court abused its discretion by cutting off all attorney fees and costs incurred after that offer. We agree. We reverse the order and remand to the court with directions to award plaintiffs reasonable attorney fees for their counsels' services, including those performed after FCA's March 2015 offer, as well as reasonable fees for services in pursuing their motion for fees and costs.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2010, plaintiffs purchased a new 2010 Chrysler Town & Country for $40,040.69, including sales tax and fees. After one year and about 15,000 miles of usage, the car began to exhibit abnormal engine noises and irregular shifting problems. These problems persisted for the next several years, leading plaintiffs in August 2014 to request that FCA repurchase the vehicle. FCA advised plaintiffs they could not do anything for them because plaintiffs had put more than 40,000 miles on the vehicle.

In early February 2015, plaintiffs sued FCA and the vehicle's seller, Peck Jeep Eagle, Inc., for damages, civil penalties and attorney fees under the Act, attaching their retail installment sale contract as an exhibit to the complaint. About two weeks later, FCA informally offered "to make restitution of the actual price paid or payable, including any incidental or consequential expenses incurred" for the vehicle, less offsets permitted

3

by statute, plus reasonable attorney fees, expenses, and costs, in exchange for the vehicle's return. FCA asked plaintiffs to provide a copy of the sales contract, current registration, payment history and a 30-day payoff so it could calculate the amount of restitution. It also asked plaintiffs to sign a release. FCA specifically stated that the offer "should not be construed as an admission of liability." Plaintiffs responded several days later, declining to accept the offer.[2]

FCA answered the complaint in early March 2015 and acknowledged the vehicle "now qualifies for repurchase under the [Act]." FCA otherwise denied each allegation of the original complaint, including those that would entitle plaintiffs to a civil penalty.[3] It also filed a cross-complaint against plaintiffs seeking a judicial declaration that it did not willfully violate the Act and that plaintiffs were not entitled to any civil penalty. FCA asked the court in advance to cut off plaintiffs' entitlement to attorney fees incurred after FCA's February 2015 informal offer.

About a week later, FCA served an offer to compromise and to repurchase the vehicle under section 998. In an accompanying letter, FCA stated it did "not have the

---

[2] The record does not contain plaintiffs' response, but attorney invoices and other evidence indicates that several days later they sent a letter rejecting the informal offer as impermissibly vague and incapable of being accepted for failing to state a specific dollar amount.

[3] " 'If the buyer establishes that the failure to comply [with an obligation under the Song-Beverly Act] was willful, the judgment may include, in addition to [actual damages], a civil penalty which shall not exceed two times the amount of actual damages.' " (*Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 468 (*Goglin*); quoting § 1794, subd. (c).)

4

information necessary to compute the appropriate amount of restitution . . . or the amount of attorney fees and other costs," but committed "to pay the full amounts owed pursuant to the relevant code sections."  Accordingly, FCA offered to make restitution in an amount equal to the actual price paid for the vehicle (including charges for the transportation and manufacturer-installed options as well as collateral charges such as sales tax, license fees, and registration fees, but excluding nonmanufacturer items installed by a dealer or the buyer) less an offset for plaintiffs' personal use, plus reasonable costs, expenses, and attorney fees.[4]  Plaintiffs objected to the offer, stating in part:  (1) its terms were vague, ambiguous, uncertain, and incomplete; (2) section 1793.2, subdivision (d)(2)(B) required restitution in an amount equal to the actual price "paid or payable" rather than "paid" as indicated in the offer; (3) it did not specify a dollar amount of restitution; (4) it did not indicate the mileage to be used in the offset calculation; (5) it was silent as to specific incidental and consequential damages; (6) it failed to specify if and when the vehicle was to be returned or the date plaintiffs would be paid; (7) it was unclear as to whether plaintiffs would be required to sign a release; (8) it limited the

_____

4      More fully, FCA's March 2015 section 998 offer was "to make restitution pursuant to . . . section 1793.2[, subdivision] (d)(2)(B) in an amount equal to the actual price paid for the vehicle, including any charges for the transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales tax, license fees, and registration fees less an amount directly attributable to plaintiffs' use of the vehicle between the date they purchased the vehicle and the date on which the vehicle was first presented to an authorized Chrysler repair facility for repairs that gave rise to the nonconformity alleged in the complaint as calculated pursuant to . . . section 1793.2[, subdivision] (d)(2)(C) . . . [and] to pay reasonable costs, expenses and attorneys' fees based on actual time expended up to the date of this [section 998 offer], pursuant to . . . section 1794[, subdivision] (d)." (Some capitalization omitted.)

recovery of fees by cutting off attorney fees from the date of the offer, contradicting the Act; and (9) it was silent as to prejudgment interest.

Following the March 2015 section 998 offer, the matter proceeded with a demurrer to FCA's cross-complaint, discovery and other litigation over the next fifteen months in anticipation of the July 29, 2016 trial date.

On June 27, 2016, FCA served an amended section 998 offer proposing to pay plaintiffs $65,000 in exchange for dismissal of the action and the vehicle's return. FCA offered to pay reasonable costs, expenses and attorney fees under section 1794, subdivision (d) based on actual attorney time expended up to the date of the offer either stipulated by the parties or by motion. By mid-July 2016, the parties had negotiated a settlement in which FCA agreed to pay plaintiffs $76,000 plus attorney fees, costs and expenses, and agreed plaintiffs were the prevailing parties.

Unable to reach an agreement with FCA for the amount of attorney fees, costs, and expenses, plaintiffs moved for $139,227 in costs and fees, comprised of lodestar fees of $89,445, a 1.5 multiplier on the fees of $44,723, and costs of $5,059.05. In the motion, they summarized the litigation and efforts of their counsel, O'Connor & Mikhov, LLP, who took the matter on a contingent fee basis. They also submitted declarations from attorneys and staff, including partners Mark O'Connor[5] and Steve Mikhov. Both detailed

---

5      Attorney Mark O'Connor provided the hourly rates of all attorneys and staff from his firm in the matter. He stated the following individuals, including himself, worked on the case: Partner Mark O'Connor at $650 per hour, partner Steve Mikhov at $500 per hour, associate Russel Higgins at $400 per hour, associate Lauren Ungs at $350 per hour, associate Stephanie Marshall at $200 per hour, associate Alastair Hamblin at $325 per

6

the hourly rates of attorneys and staff from their firm in the matter and described attorney fee awards in other lemon law matters. Attorney Mikhov further detailed the bases for their multiplier request, namely the risks associated with contingent fee arrangements and the results achieved. Additionally, Mikhov stated it is "not uncommon for attorney's fees and costs to exceed the client's damages . . . which is the reason behind the fee shifting provision of the [Act]." According to Mikhov, his firm's clients (including plaintiffs) realize cost savings due to the experience his firm has with lemon law cases because relevant work product from one case may be used similarly in others.

FCA opposed the motion. Asserting plaintiffs' attorneys incurred the "maximum amount of attorneys' fees possible before resolving the matter," it argued the requested fees were excessive and unreasonable. FCA argued plaintiffs' attorneys ignored or objected to its settlement offers as too vague and unspecific, despite FCA's "straightforward and concise" offers to pay the "full amount of restitution according to the statute's formula, and to pay reasonable costs, expenses, and fees incurred." Further, FCA argued plaintiffs' counsel had all the information needed to make "[a] simple calculation" to estimate the total dollar amount of FCA's offers. According to FCA, these refusals preceded "aggressive discovery outside the bounds of what the value of the case

hour, associate Chris Swanson at $325 per hour, associate Shawna Melton at $325 per hour, associate Amy Morse at $250 per hour, contract attorney Constance Morrison at $350 per hour, associate Kevin Van Hout at $300 per hour, associate Daisy Ortiz at $225 per hour, associate Kristina Stephenson-Cheang at $350 per hour, contract attorney Kirk Donnelly at $375 per hour, and paralegal Amy Fox at $175 per hour. O'Connor did not summarize the total hours by individual, but instead referenced an attached exhibit of all invoices. The invoices detailed the expenses and the work performed by attorneys and staff, by date, from July 15, 2014, through January 31, 2017.

warrant[ed]" on a case they described as a basic Song-Beverly action without any novel legal or unique technical knowledge required. FCA asserted that plaintiffs' counsel created the risk of nonpayment by failing to accept or respond to FCA's offers, and were solely responsible for the delays in the case. FCA argued that the Act should not permit plaintiffs to recover attorney fees incurred solely in pursuit of a civil remedy or more fees; it asserted plaintiffs' counsel's sole objective was to prolong the litigation so as to incur substantial attorney fees before settling the action. FCA did not, however, establish with legal authority or otherwise what hours and rates would be considered reasonable for a case with a favorable result for the plaintiffs.

In reply, plaintiffs argued FCA had misstated facts and law. They pointed out FCA did not dispute the lodestar method was the proper means for determining attorney fees or their prevailing party status. They argued it was FCA that mishandled the case by willfully failing to abide by its affirmative obligation under the Act to promptly offer restitution or replacement of a vehicle at the time it qualified for such a remedy. They argued FCA had a duty to inquire into the facts and circumstances but did not, and rejected their August 2014 demand for repurchase or replacement. Plaintiffs also argued FCA did not accurately recount the parties' settlement efforts; they pointed out it qualified its first March 2015 section 998 offer with a refusal to admit liability, and that offer was deemed withdrawn after 30 days so that plaintiffs had nothing to accept after that point. They pointed out that once FCA made a reasonable settlement offer in June 2017, the case settled. Plaintiffs argued they were not in sole possession of information that would permit FCA to comply with its obligations under the Act, as the sales contract

8

was attached to the complaint, and FCA could have determined the paid and payable amount as the amount financed was at 0 percent interest. They argued the "only explanation for the delay is that it took the skill and persistence of Plaintiffs' counsel for FCA to appreciate its own exposure to civil penalties under the [Act]." Plaintiffs reiterated that FCA had not rebutted the fact their case was taken on contingency basis, and asserted that FCA's attacks on their counsel as motivated to run up fees were entirely unsupported in the record.

In February 2017, the court issued a tentative ruling awarding plaintiffs $81,745 in lodestar attorney fees and $5,059.05 in costs, stating it was "of the opinion that the lodestar represents reasonable hourly rates for the Plaintiffs' counsel and that the time was reasonably incurred."[6] It denied the multiplier request. Following the hearing, the court took the matter under submission.

About a month later, the court issued its final order. In it, the court drastically reduced plaintiffs' sought-after fees, indicating it was persuaded by FCA's counsel's argument that FCA's "repeated efforts to settle this matter immediately after litigation was commenced should significantly reduce any fees awarded." The court summarized FCA's February 12, 2015 informal settlement offer, FCA's March 3, 2015 answer admitting the vehicle qualified for repurchase, and FCA's March 10, 2015 section 998

---

6       Plaintiffs' $89,445 lodestar request included twenty hours at $450 per hour in anticipation of the reply and appearance at the hearing. Their reply did not include support for this rate, therefore the court concluded a reasonable rate would be $325 and adjusted the lodestar accordingly.

9

offer. The court stated: "It does not appear that Plaintiffs' counsel responded to these letters or the [section 998 offer] with the numbers [FCA] sought to simply be able to settle the case."

The court continued: "From essentially the moment the complaint was filed, the Defendant sought to resolve this case on the terms specified under the . . . Act. Notwithstanding Defendant's willingness to settle and communications of such intent, it does not appear Plaintiffs ever attempted to facilitate a prompt resolution. For example, later in 2015 when Defendant sought to ascertain by way of interrogatories the necessary amounts to which Plaintiffs would be entitled, the responses failed to provide Defendant that information."

"The Court would agree that if the issue before it was the enforceability of a [section] 998 offer, that (1) the February 2015 letter was not a valid [section 998 offer]; and (2) the March 2015 offer was vague. [¶] However, the enforceability of a [section] 998 offer is not the issue before the Court. Rather the issue is whether the fees sought by the Plaintiffs were 'reasonably incurred by [the Plaintiffs] in connection with the commencement and prosecution of [this] action.' "

"The Court concludes that it cannot make a finding that the fees Plaintiffs seek were reasonably incurred in the prosecution of this action when it appears abundantly clear that Defendant from the beginning was trying to extricate itself from the case—simply asking the Plaintiffs to tell it what the appropriate dollar amount was—with no cooperation from the Plaintiffs. Neither Plaintiffs' arguments at the hearing nor in their

10

papers provided a satisfactory explanation for the continued litigation of this case after Defendants' initial settlement offers."

"Having reviewed the billing records of counsel, the Court finds that Plaintiffs are entitled to recover their attorneys' fees up to March 13, 2015, in the total amount of $2,095. Plaintiffs have failed to explain why any fees over and above this amount were 'reasonably incurred.' In this regard, the Court again notes its initial review of the billing records revealed services performed that appeared reasonable in amount in terms of the amount of time spent on a given service and the dollar amount therefor. However, the real issue here is whether the performance of those services in the first instance was even necessary. The Court concludes that but for the services up to March 13, 2015, the remaining fees charged were not necessary and, therefore, not reasonably incurred." The court then found plaintiffs were entitled to $541.90 in costs for expenses incurred before March 13, 2015 ($106.90 for service of summons, and $435 for the complaint filing fee). It awarded a total of $2,636.90 in fees and costs.

Plaintiffs timely appealed from the postjudgment attorney fees order.

DISCUSSION

I. *Legal Principles for Attorney Fee Recovery Under the Act and Standard of Review*

We summarized the legal principles applicable to an attorney fee award under the Act in *Goglin*, *supra*, 4 Cal.App.5th 462: "A prevailing buyer in an action under the Song-Beverly Act 'shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the

11

buyer in connection with the commencement and prosecution of such action.' (Civ. Code, § 1794, subd. (d).) The statute 'requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended, and the monetary charge being made for the time expended are reasonable. These circumstances may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited, and the results achieved. If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount. A prevailing buyer has the burden of "showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.' " ' " (*Goglin*, at p. 470, in part quoting *Nightingale v. Hyundai Motor America* (1994) 31 Cal.App.4th 99, 104.)

" 'We review an award of attorney fees under [the Song–Beverly Act] for abuse of discretion. [Citations.] We presume the trial court's attorney fees award is correct, and "[w]hen the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated." [Citation.] "The ' "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " ' " (*Goglin*, *supra*, 4 Cal.App.5th at pp. 470-471; *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 148; see also *569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6

Cal.App.5th 426, 433 (*569 East County*).)  This standard of review applies to a trial court's application of correct legal standards to the circumstances of a specific case.  (*569 East County*, at p. 434.)

Though the trial judge has broad discretion in awarding reasonable attorney fees, it is nevertheless "a legal discretion subject to the limitations of legal principles governing the subject of its action . . . ."  (*569 East County*, *supra*, 6 Cal.App.5th at p. 433, fn. 8.) "[T]he determination of whether the trial court *selected* the proper legal standards in making its fee determination is reviewed de novo [citation] and, although the trial court has broad authority in determining the amount of reasonable fees, the award can be reversed for an abuse of discretion when it employed the wrong legal standard in making its determination."  (*Id*. at p. 434; see also *id*. at p. 433, fn. 8 ["[W]hen the trial court mistakenly applies erroneous legal principles when exercising its discretion, we may review that error de novo."].)  Further, when the record affirmatively shows the trial court's discretionary determination of fees pivoted on a factual finding entirely lacking in evidentiary support, the matter must be reversed with instructions to redetermine the award.  (*Id*. at p. 435, fn. 10 [interpreting *McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695 (*McKenzie*)].)

## II.  *Contentions*

Plaintiffs contend the trial court abused its discretion and essentially punished them and their counsel for pursuing their rightful recovery under the Act when it refused to award any attorney fees incurred after FCA's March 2015 settlement offer, which proposed to pay significantly less than the amount plaintiffs ultimately obtained in

settlement with FCA. They argue the court had no discretion to consider lesser settlement offers in its analysis, which would be inconsistent with and defeat the purpose of section 998. They point out the court found reasonable the hourly rates and amounts their counsel charged for the services rendered, but disregarded the exceptional results they achieved in settling their case for $76,000. According to plaintiffs, their attorneys' time following the March 2015 offer was well spent and reasonably incurred; they argue it would be beyond the bounds of reason to say that "obtaining a recovery of *double the amount initially offered* is not 'a satisfactory explanation for the continued litigation.' " Plaintiffs maintain upholding this sort of ruling would prevent consumer attorneys from effectively representing their clients by fighting for the best result, and incentivize manufacturers to never repurchase vehicles before litigation is filed or comply with the Act's requirements, because it would be unlikely that a consumer would find an attorney to represent them.

FCA counters with a broad criticism of the "way counsel for buyers litigate cases under the Act." It says that counsel "litigates lemon law cases shorn of the conventional principles of reasonable economic value, efficiency, risk-benefit weighing, and proportionality—the normal principles that govern mainstream litigation and constrain lawyers from over-litigating cases and routinely lead to negotiated settlements." FCA asserts that "[a]ll but $2,095 of the attorney's fees . . . would have been avoided if Plaintiffs' counsel had acted in an economically rational manner and behaved responsibly and rationally when responding to a reasonable settlement offer (i.e., full statutory restitution) upon [FCA] answering the complaint." Characterizing plaintiffs' fee request

as "overblown and unreasonable," and their counsel as "uncooperative and obstructionist," they contend plaintiffs failed to demonstrate the fees generated after March 10, 2015, were necessary and reasonably incurred.

We conclude plaintiffs' points have merit.

III. *The Court Erred by Deciding Plaintiffs' Entitlement to Prevailing Party Attorney Fees Based on Their Failure to Accept Unreasonable or Invalid Settlement Offers*

As we have stated above, when a trial court severely curtails the number of compensable hours in a fee award, as the court did here, a reviewing court may engage in a presumption that the court determined the fee request was inflated and thus unreasonable on that basis. (See *569 East County*, *supra*, 6 Cal.App.5th at p. 434.) This is in keeping with the settled appellate review principle that an order is presumed correct. (*Id*. at p. 434, fn. 9.) But operation of that presumption has limits. We cannot indulge in such a presumption if it is " ' "contradicted by or inconsistent with the record on appeal . . . ." ' " (*Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1250; see also *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 261; *United States Elevator Corp. v. Associated International Insurance Company* (1989) 215 Cal.App.3d 636, 648 ["on appeal we cannot indulge in a presumption which contradicts an express recital in the record. Where the record states what was done, it will not be presumed that something else was done"]; accord, *McKenzie*, *supra*, 238 Cal.App.4th at p. 704.[7]) Here, the court's

---

[7] In *569 East County* this court interpreted *McKenzie* as standing for the proposition that a court will abuse its discretion if its order contravenes uncontradicted evidence. (*569 East County*, *supra*, 6 Cal.App.5th at p. 435, fn. 10.) *McKenzie* is more broadly

15

rationale for finding plaintiffs were not entitled to attorney fees after March 13, 2015, was based on improper considerations as to the reasonableness of their response to and continued litigation after FCA's unreasonable or invalid settlement offers.

Concededly, the trial court had broad discretion in determining the reasonableness of plaintiffs' fee request, and in its tentative ruling appeared to adopt the requested lodestar amount with some reductions for unsupported time and an excessive hourly rate (see footnote 6, *ante*). But the court ultimately discarded the lodestar inquiry in its final order; it used what the court itself found was a vague and invalid section 998 compromise offer to cut off plaintiffs' attorney fees, under the apparent theory that it was unreasonable for plaintiffs' counsel to reject that offer or counsel should have been more cooperative in facilitating a settlement for an award of restitution rather than continue litigating the issue of FCA's willfulness for a civil penalty under the Act or seek any additional recovery. In substance and effect the court incorporated the penalty provisions of section 998 (applicable to instances—unlike this case—where the plaintiff's result obtained is *less than* the defendant's settlement offer) into its reasonableness analysis, and failed to acknowledge that plaintiffs for their counsel's litigation efforts recovered an amount more than double the value of FCA's initial restitution offers. In this way, the court abused its discretion. Its decision to cut off fees from the point of FCA's March 2015 offer, particularly in the face of plaintiffs settlement for almost double the amount, was error.

persuasive and controlling on the circumstances presented here, as it similarly involved an award under the Act and the trial court's erroneous decision to excise attorney fees incurred after a first section 998 offer as unreasonable and not recoverable. (*McKenzie*, *supra*, 238 Cal.App.4th at pp. 698, 702.)

We do not write on a blank slate in reaching our conclusions. *Goglin* involved a plaintiff who in November 2014 settled her action under the Act against the defendants for $75,000, less her loan balance. (*Goglin*, *supra*, 4 Cal.App.5th at pp. 468-469.) Defendants had previously offered to resolve the matter several times: Before the plaintiff filed suit, one of the defendants offered to repurchase her vehicle for all costs with an offset and reimburse her reasonable attorney fees, but conditioned the offer on her agreeing to sign a general release, a waiver of section 1542, and a confidentiality clause. (*Id*. at p. 465.) The plaintiff responded that she would accept an unconditional offer of reimbursement without offsets, and declined to sign the proposed release agreement with its contingencies and waivers. (*Id*. at p. 466.) After the plaintiff filed suit and some discovery had taken place, the defendants collectively offered to repurchase her vehicle and settle the matter for about $54,000, but again conditioned that offer on the plaintiff dismissing her case and executing a settlement agreement with a confidentiality clause and a waiver of unknown claims. (*Id*. at p. 467.) The plaintiff stated she would accept the offer if it were an unconditional offer to comply with section 1793.2, subdivision (d)(2) with a stipulation that she was the prevailing party, but again rejected the release with its contingencies and waivers. (*Id*. at pp. 467-468.) About five months before the parties settled the case for $75,000, the defendants served a section 998 offer to repurchase her vehicle for $45,762, pay her incidental and consequential damages, and reimburse her for attorney fees and costs to be determined by noticed motion. (*Id*. at p. 468.)

17

The plaintiff in *Goglin* moved for an award of about $200,000 in attorney fees and costs; the defendants in opposition argued her counsel should not be compensated for *any* litigation activities given the pre-trial settlement offer, and thus any time spent on litigation-related activities were unnecessary and unreasonable; the claimed fees were grossly inflated and not reasonably expended because the plaintiff "ignored repeated offers of restitution, filed an unnecessary lawsuit, and engaged in unnecessary litigation activity"; the case did not warrant such an award because it was not complex; the plaintiff settled for only a portion of the total recovery she initially sought; and none of the costs were reasonably necessary given the prelitigation offer to reimburse the plaintiff for everything she was owed. (*Goglin*, *supra*, 4 Cal.App.5th at p. 469.) The trial court awarded the plaintiff about $185,000 in attorney fees and costs. (*Id*. at p. 470.)

On appeal, we addressed the defendants' argument that the plaintiff was not entitled to any fees or costs because she unreasonably refused to accept one of the defendant's prelitigation settlement offers. (*Goglin*, *supra*, 4 Cal.App.5th at p. 471.) We stated "this contention ignores the unfavorable aspects of the offer, including requiring [the plaintiff] to agree to a broad release of claims and a confidentiality clause.[] [The plaintiff] repeatedly and consistently objected to these extraneous provisions and the parties' final settlement agreement does not include them. Rejecting the prelitigation settlement because of these unfavorable extraneous terms was not unreasonable." (*Ibid*.)

In reaching this conclusion, we relied in part on *McKenzie*, *supra*, 238 Cal.App.4th 695. (*Goglin*, *supra*, 5 Cal.App.4th at p. 471.) In *McKenzie*, after the

18

plaintiff settled his lemon law claims with the defendant, the trial court awarded him $28,350 in attorney fees out of his requested $48,000. (*McKenzie*, 238 Cal.App.4th at p. 697.) The defendant had made earlier settlement offers, the first in April 2013 including a broad release and a confidentiality clause, which were removed from the second offer that the plaintiff accepted. (*Id*. at pp. 698, 699-700.) The trial court refused to award the plaintiff any of his attorney fees incurred after the defendant's initial settlement offer, ruling that the offer the plaintiff eventually accepted was identical to the first offer he had rejected, thus the 42 hours billed by counsel in the face of the first offer "amounted to 'plaintiff's counsel exaggerating the amount of their fees to increase their prized fees' " and the plaintiff had "unreasonably delayed settlement for the sole purpose of 'ginning up' his fee award." (*Id*. at pp. 698, 702.) The court also found the plaintiff's two attorneys had billed for many hours of duplicative work, which it deemed unreasonable. (*Ibid*.)

Our Division Three colleagues reversed. (*McKenzie*, *supra*, 238 Cal.App.4th at p. 698.) They declined to indulge the inference that the trial court had simply made an assessment of the usual lodestar factors to reach its award of $28,350 in reasonable fees: "[W]hile we could certainly do that in the absence of any specific analysis provided by the trial court, we cannot ignore the court's reasoning when detailed in the order. In this case, the court was quite explicit in explaining the basis for reducing McKenzie's fees— rather than imposing a general reduction on the fees requested from the outset, on the basis the rates charged by McKenzie's counsel were too high or the overall time claimed was unreasonable given the complexity of the case, the court characterized its reduction

19

as 'based on redaction of fees for duplicated and unnecessary services and billing *performed after defendant's service of its CCP Section 998 offer*.' . . . The court awarded McKenzie 100 percent of the fees he requested for the period before Ford's initial offer, but found the entirety of 'the subsequent billing was unreasonable' and excised *that specific portion of the fees* from McKenzie's award. When the court states its reasons explicitly, we cannot infer its exercise of discretion rested on a wholly different basis." (*Id*. at pp. 704-705.)

The Court of Appeal concluded the trial court's actual reasoning was an abuse of discretion, as the court had erroneously viewed the two settlement offers as essentially identical, and thus believed the plaintiff acted unreasonably in rejecting the first offer for the purpose of exaggerating his fees. (*McKenzie*, *supra*, 238 Cal.App.4th at p. 705.) The appellate court observed that though the defendant had conceded on appeal that its initial settlement offer contained numerous extraneous provisions, it took the position that they were legally meaningless or unenforceable, and continued to assert that the plaintiff's refusal to accept the first offer was unreasonable. (*Ibid*.) After pointing out the problems in the defendant's extraneous provisions, and rejecting the defendant's assertions concerning the duplication of work, the Court of Appeal held that the plaintiff had acted reasonably in rejecting the first proposed compromise offer, and "[t]he trial court's decision to award no fees in the wake of Ford's initial section 998 offer to compromise amounted to an abuse of discretion in the circumstances of this case." (*Id*. at p. 708.) It reversed the fee award and remanded the case, directing the court to reconsider the

20

amount of fees to be awarded the plaintiff for the period following the defendant's initial section 998 offer. (*Ibid*.)

The import of both *Goglin* and *McKenzie* is that where a defendant's settlement offer contains unfavorable provisions or is otherwise invalid, as FCA's offers were here, it is not unreasonable for a plaintiff to reject that offer. (*Goglin*, *supra*, 4 Cal.App.5th at p. 471; *McKenzie*, *supra*, 238 Cal.App.4th at p. 708.) We recognize that the plaintiffs in these cases engaged in some negotiating following the defendants' settlement offers, responding with counter offers. (*Goglin*, at pp. 466-468; *McKenzie*, at p. 700.) In *McKenzie*, the court observed that the plaintiff's prompt service of a counter offer stripped of the extraneous terms reflected his willingness to complete a settlement. (*McKenzie*, at p. 708.) But the holdings in *Goglin* and *McKenzie* turn on evidence that the plaintiffs did not act unreasonably in continuing to litigate their cases in the face of the defendants' settlement offers, and on the absence of evidence that the failure to resolve the cases was solely attributable to counsel's desire to generate more fees. (See *Goglin*, at p. 472.) In *Goglin*, we specifically rejected the defendant's argument that the plaintiff's counsel's hours were unreasonable and unnecessary because the defendants' settlement offers obviated the plaintiff's need to prove liability: "The settlement offers themselves contained no admission of liability and two of the three offers expressly indicated liability was not being admitted. Thus, until the case actually settled, Goglin had to conduct discovery and prepare to prove liability on her varied claims with their varied elements. She also had to be prepared to counter the numerous affirmative defenses raised in the answers to her complaint. We, therefore, cannot conclude the court

21

abused its discretion in finding the time spent by Goglin's counsel on litigation activities was reasonable." (*Id*. at p. 473.)

In this case, as in *McKenzie*, we cannot indulge an inference that the trial court's order drastically reducing plaintiffs' fee request from $89,445 to $2,636 was based on a legitimate lodestar assessment of the overall reasonableness of counsel's fees based on rates, duplication of effort, or complexity. The court here found counsel's hourly rates and the time spent on tasks to be reasonable. Rather, it expressly based its ruling on the necessity of plaintiffs' continued efforts in litigating the case to the eventual settlement. But as in *Goglin* and *McKenzie*, FCAs settlement offers were unacceptable; the first informal offer required them to sign a release without stating any release terms, and the second was insufficiently specific, as the trial court found. (See *MacQuiddy v. Mercedes-Benz USA, Inc.* (2015) 233 Cal.App.4th 1036, 1050 [to be valid, a section 990 offer "must be sufficiently specific to permit the recipient meaningfully to evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk he may have to shoulder his opponent's litigation costs and expenses"]; *Chen v. Interinsurance Exchange of the Automobile Club* (2008) 164 Cal.App.4th 117, 121-122 [valid section 998's terms and conditions must be sufficiently certain to be capable of valuation].) On this record, it was not unreasonable for plaintiffs to reject FCA's settlement offers, and thus the court erred by using this criteria to assess plaintiffs' entitlement to fees.

Nor can we conclude that the trial court's order was correct regardless of its underlying reasoning. (*569 East County*, *supra*, 6 Cal.App.5th at p. 435, fn. 10.) That is because the record otherwise does not support the trial court's finding as to the

22

unreasonableness of plaintiffs' attorney fees incurred after March 13, 2015. The record shows that FCA declined to accept plaintiffs' April 2014 pre-litigation demand that it repurchase their vehicle, but instead waited until after plaintiffs filed suit to make its first, nonspecific, offer to pay restitution. Absent a court finding that FCA's conduct was not willful as a matter of law, plaintiffs were entitled to proceed to litigate the issue of FCA's willfulness and pursue their claims for not only restitution, but civil penalties under the Act. " 'Attorneys generally must pursue all available legal avenues and theories in pursuit of their clients' objectives; it is impossible, as a practical matter, for an attorney to know in advance whether or not his or her work on a potentially meritorious legal theory will ultimately prevail.' " (*Greene v. Dillingham Construction, N.A., Inc.* (2002) 101 Cal.App.4th 418, 424; see also *Thayer v. Wells Fargo Bank, N.A.* (2001) 92 Cal.App.4th 819, 839 (*Thayer*); *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 250.) Plaintiffs' persistence eventually paid off; they reached a result in keeping with their efforts when they settled with FCA for $76,000 and were deemed the prevailing parties entitled to recover their reasonable attorney fees. In evaluating reasonableness, "the most critical factor is the degree of success obtained." (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 436.) Plaintiffs here achieved a relatively high degree of success in resolving their claims.

Citing *Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, *Thayer*, *supra*, 92 Cal.App.4th 819, and *Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, FCA argues that the trial court could properly look to evidence of spurned settlement offers to determine if subsequently incurred attorney fees

23

were in fact reasonably incurred. They acknowledge the cases such as these typically involve instances where the plaintiff obtains a *less favorable* result at trial, but maintain we should read them to allow a court to consider rejected settlement offers "whenever the post-settlement litigation produces a huge disparity between the legal fees *incurred* and the recovery *obtained*." FCA argues we should not look to the fact plaintiffs in the end obtained double the amount of their settlement offers, but focus on the "valued *added*" by plaintiffs' counsel in "running up nearly $90,000 in fees." They suggest plaintiffs spurned "good faith, reasonable settlement offers" and characterize plaintiffs' counsel as engaging in "self-dealing," "patent over-lawyering," "over-staff[ing]," and seeking "overblown fees."

FCA's points concerning the reasonableness of their settlement offers and their characterizations of plaintiff's counsel's efforts are contradicted by the trial court's own findings and the nature of the settlement offers. And "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." (*Premier Medical Management. Systems, Inc. v. California Insurance Guarantee Association* (2008) 163 Cal.App.4th at 550, 564.) Otherwise, we are not persuaded by FCA's arguments that we should judge plaintiffs' success in relation to the attorney fees expended to get there.

*Harman*'s plaintiff was only partially successful on his claims under the federal Civil Rights Act; the Court of Appeal observed that case law was not consistent as to whether a party's refusal of a settlement offer should be part of a court's analysis of a reasonable attorney fee. (*Harman v. City and County of San Francisco*, *supra*, 138 Cal.App.4th at p. 1315.) But in that case, there was a "significant disproportionality"

24

between the attorney's trial fees, $247,903, and the additional recovery following trial,

$5,000 more than the defendant's settlement offer of $25,000 made one month before

trial. (*Id*. at pp. 1312, 1315-1316.) Under those facts, the appellate court held the trial

court could consider defendant's settlement offer in evaluating the benefit to the plaintiff

of the attorney's services at trial.[8] Unlike in *Harman*, plaintiffs here succeeded on their

sole claim, with FCA deeming them the prevailing party and agreeing to pay almost

double the estimated restitution/repurchase amount (estimated by FCA on appeal at about

$40,000) for their vehicle. *Harman*'s principles are not applicable, and do not permit us

to uphold the trial court's use of plaintiffs' rejection of FCA's settlement offers to deny

them any fees incurred after March 13, 2015.

Nor does *Thayer*, *supra*, 92 Cal.App.4th 819 support FCA. *Thayer* involved the

Court of Appeal's assessment of one (of many) counsel's request for *enhanced* lodestar

fees in a case in which the defendant bank, two months after the lawsuit's filing,

"promptly capitulated" entirely without ever disputing the plaintiffs' factual or legal

---

[8]     Notably, on remand and having been directed to reconsider the reasonableness of
the attorney fee award using the lodestar method, the trial court in *Harman* again
awarded over $1.1 million in attorney fees in the case, in which the plaintiff had obtained
a recovery of $30,300. (*Harman v. City and County of San Francisco* (2007) 158
Cal.App.4th 407, 415.) In upholding that award, the Court of Appeal emphasized that
"[t]he law does not mandate . . . that attorney fees bear a percentage relationship to the
ultimate recovery of damages in a civil rights case. . . . '[T]he Supreme Court has not
adopted a rule that measures a fee award by a proportion of the damages awarded.' " (*Id*.
at p. 421.)

claims. (*Id*. at pp. 829, 838-839.)[9] The trial court had applied a positive multiplier to two of four periods of time for which counsel sought fees (for preparing the complaint and negotiating the substantive provisions of the settlement agreement, *id*. at p. 831), and on appeal the bank challenged the court's order applying the lodestar factors and multiplier (though it did not contest the number of hours worked or the hourly fee used by the trial court). (*Id*. at pp. 833-834.) The Court of Appeal found no justification for the *enhanced* lodestar under the unique circumstances of that case, involving a bank's speedy and total concession of the plaintiffs' legal claims as well as their right to reasonable fees, and multiple counsel engaging in "protracted negotiations that delayed execution of the settlement agreement." (*Id*. at pp. 834-839.) At the same time, the *Thayer* court recognized the "need to encourage 'private attorneys general' willing to challenge injustices in our society" and that "[a]dequate fee awards are perhaps the most effective means of achieving this salutary goal." (*Id*. at p. 839.) Thus, it counseled, courts should not be "unduly parsimonious in the calculation of such fees." (*Ibid*.) "Compensation should not be strictly limited to efforts that were demonstrably productive. 'Lawyers for plaintiffs . . . must evaluate, accept and prosecute suits on the basis of the entire spectrum of theories that show early promise of vindicating their clients' rights. Every lawyer, indeed every judge, has pursued blind alleys that initially

---

9      *Thayer* involved nine law firms for plaintiffs in five coordinated class action law suits arising from Wells Fargo's anticipatory breach of a promise to provide checking accounts free of any service charge during the account's lifetime. (*Thayer*, *supra*, 92 Cal.App.4th at pp. 824-825.) The bank had retracted its notice to impose service fees on certain accounts and granted lifetime free checking to every account holder who had received the notice, claiming this mooted the law suit. (*Id*. at pp. 825 & fn. 2, 829.)

seemed reasonable or even professionally obligatory.  To reward only the pursuit of a

successful theory in cases such as this undercompensates the inevitable exploratory

phases of litigation, and may also invite overly conservative tactics or even prohibit some

high-risk but deserving actions entirely.' " (*Ibid*.)  Ultimately, the Court of Appeal

remanded the matter to the trial court to consider applying a *negative* multiplier for

counsel's fee request, in view of the fact that "[d]uplication was . . . the hallmark of the

coordinated proceeding." (*Id*. at pp. 840, 844-845)  Nevertheless, the court concluded:

"Nothing we have said in this opinion signals any retreat from our firm and continuing

commitment to the settled principle that attorneys entitled to fee awards for advancing

important public interests must be fully and fairly compensated, so as to encourage the

provision of such legal assistance.  However, the predicate of *any* attorney fee award,

whether based on a percentage-of-the-benefit or a lodestar calculation, is the necessity

and usefulness of the conduct for which compensation is sought.  To award an attorney a

premium for duplicative work that was neither difficult nor particularly productive,

involved little or no risk, may well have delayed settlement, and seems to have been

primarily designed to line counsel's pockets, would reward behavior which it is in the

public interest (and as well the special interest of the legal profession) to strongly

discourage." (*Id*. at p. 846.)

Unlike the defendant in *Thayer*, *supra*, 92 Cal.App.4th 819, FCA did not entirely

or promptly capitulate on plaintiffs' claims, which included a request for civil penalty

based on allegations that FCA engaged in a willful violation of the Act.  FCA, as was its

right, denied liability for a civil penalty, and went so far as to file a cross-complaint

27

seeking a judicial declaration to the contrary, to which plaintiffs demurred. The trial court here found no issues with counsel's time or hourly rates, rejecting any suggestion of duplicative or inefficient effort. When FCA proposed a settlement taking into account some measure of relief over and above straight restitution, plaintiffs promptly negotiated a settlement. These circumstances are nothing like those in *Thayer*, in which the record lacked any justification for enhancing the attorney's requested fees. Rather, the controlling principle is *Thayer*'s focus on granting plaintiffs' counsel "[a]dequate fee awards" in cases vindicating important public interests—here, consumer protection. (See *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990.) As we have said, "California law requires that attorney fee awards be 'fully compensatory.' " (*Roth v. Plikaytis* (2017) 15 Cal.App.5th 283, 290.)

*Meister v. Regents of University of California*, *supra*, 67 Cal.App.4th 437, held a court has discretion to consider a reasonable nonstatutory settlement offer so as to reduce an attorney fee award if the party seeking fees continues to litigate after rejecting an offer greater than the relief the party ultimately obtained. (*Id*. at pp. 450, 452, 456.) *Meister* relied on authority reasoning that " 'where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney.' " (*Id*. at p. 452, quoting *Marek v. Chesny* (1985) 473 U.S. 1, 11.) In *Greene v. Dillingham Construction N.A., Inc.*, *supra*, 101 Cal.App.4th 418, Division Four of the First District Court of Appeal disagreed with the Sixth District's reasoning in *Meister*. The *Greene* court declined "to follow [*Meister's*] holding that a trial court can consider an informal settlement offer" in

28

determining whether fees were reasonably spent. (*Id.* at p. 426.) We need not decide which is the better reasoned analysis, because *Meister* has no application here. Plaintiffs did not continue to litigate after receiving and rejecting an offer more favorable to them than their ultimate recovery; plaintiffs obtained more in their final settlement than the earlier straight restitution settlement offers made by FCA. Their litigation activities in pursuit of that result cannot be said to be unreasonably spent under *Meister*'s rationale.

We cannot justify the trial court's order on the stated basis that plaintiffs' counsel failed to give FCA information to enable it to calculate a full and complete offer of restitution. The trial court apparently reasoned plaintiffs unnecessarily prolonged the case by failing to "facilitate a prompt resolution," thus any fees incurred after FCA's offer were unreasonable. On appeal, FCA does not continue to assert that it was unable to calculate a restitution amount for settlement purposes, and we observe it had in its possession the copy of plaintiffs' sales contract showing gross sales price, document fees and sales tax, registration, the total amount financed, monthly payment amounts, and the beginning and final payment dates (January 12, 2011, and December 12, 2016). FCA does not deny having access to warranty information related to the vehicle. Rather, FCA argues plaintiffs and their counsel made a "tactical decision" to refuse to engage in settlement talks when invited to do so. It maintains courts should not be obligated to award attorney fees to a plaintiff who rejects an offer of full statutory restitution "for th[e] speculative inquiry" in exploring a possible civil penalty. We are unable to conclude on this record that plaintiffs alone somehow stonewalled or obstructed settlement negotiations by withholding key information. And as we have explained, plaintiffs were

29

entitled to reject FCA's unreasonable offers and seek their full remedy in the absence of a court's finding as a matter of law that FCA did not willfully violate the Act. Their litigation efforts resulted in an outcome much more favorable to them than either of those offers.

FCA argues plaintiffs' request for a 1.5 multiplier shows the unreasonableness of their fee request. They cite no authority for the proposition, and we are not persuaded. While it is permissible to account for the pursuit of *unsuccessful* claims in determining a reasonable attorney fee, the fact that counsel seeks a multiplier as a component of its fee request—denied by the court in this case—is not itself a proper factor in determining the reasonableness of sought-after fees. In fact, it is not unusual for counsel to ask for a multiplier in contingent fee cases as this one. (See *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1399 ["An enhancement of the lodestar amount to reflect the contingency risk is '[o]ne of the most common fee enhancers . . . .' "].)

IV. *The Trial Court Erred as a Matter of Law by Applying the Section 998 Penalty in Awarding Reasonable Attorney Fees*

As we have stated, in reducing plaintiffs' fee award the trial court in substance and effect applied the penalty of section 998 for plaintiffs' failure to accept FCA's March 2015 settlement offer. Section 998 is intended to encourage settlement by punishing the party who fails to accept a reasonable offer. (*Elite Show Services*, *Inc. v. Staffpro*, *Inc.* (2004) 119 Cal.App.4th 263, 268.) Under the law, a plaintiff who fails to accept an offer and then fails to obtain a more favorable result at trial cannot recover his postoffer costs and must pay the defendant's costs from the time of the offer, including expert witness

30

fees. (§ 998, subd. (c)(1).) Costs include attorney fees where authorized by statute, as here. (See *Mangano v. Verity, Inc.* (2008) 167 Cal.App.4th 944, 948.) Where a section 998 offer is invalid it will not operate to cut off a plaintiff's costs. (See *MacQuiddy v. Mercedes-Benz USA*, *LLC*, *supra*, 233 Cal.App.4th at p. 1051.)

None of the factors triggering section 998's penalty warranted its application here. Under the circumstances, the court's use of the March 13, 2015 date to cut off plaintiffs' attorney fees was arbitrary and unsupportable. We therefore reverse the order.

DISPOSITION

The postjudgment order is reversed and the matter remanded with directions that the trial court award plaintiffs reasonable attorney fees for their counsels' services, including those performed after FCA's March 2015 offer, as well as reasonable fees for services in pursuing their motion for fees and costs.  Plaintiffs shall recover their costs on appeal.

O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.

Filed 12/27/18

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAMIE L. ETCHESON et al., | D072793 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2015-0004033-CU-BC-CTL) |
| FCA US LLC, | |
| Defendant and Respondent. | ORDER GRANTING REQUESTS FOR PUBLICATION |

THE COURT:

The opinion in this case filed December 6, 2018, was not certified for publication.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to: All parties